

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BELINDA RATHERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:12cv 422 |
| ) | |
| GOODWILL INDUSTRIES OF ) | |
| MICHIANA, INC., ) | |
| 1805 Western Avenue ) | |
| South Bend, Indiana 46619, ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

Belinda Rathert ("Belinda"), by counsel, Michael P. Misch, and Anderson, Agostino & Keller, P.C., for her Complaint against Goodwill Industries of Michiana, Inc. ("Goodwill"), states and alleges the following:

## I. NATURE OF THE ACTION:

1. "Rathert", an individual with a qualified disability, brings this action against Goodwill alleging that Goodwill discriminated against Rathert because of her disability in contravention of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), and The Rehabilitation Act of 1973 29 U.S.C. § 794 et seq. ("Rehab Act").

## II. THE PARTIES:

2. Belinda Rathert is a resident of St. Joseph County, Indiana, presently residing at 5503 University Drive, Apt. A, Mishawaka, IN 46545.

3. At all relevant times, Goodwill Industries of Michiana, Inc., was incorporated in the State of Indiana and had its principal place of business located at 1805 Western Avenue, South

Bend, Indiana 46619.

### III. JURISDICTION AND VENUE:

4.  This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331.

5.  Belinda was an "employee" as that term is defined by 29 U.S.C. § 630(f).

6.  Goodwill is a qualified "employer" as the term is defined by 29 U.S.C. § 630(b).

7.  The acts of Goodwill's administrator's office, officers, managers, supervisors, employees, or agents, are also the acts of Goodwill.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all events, transactions, occurrences, and material acts of Goodwill's administrators, officers, managers, supervisors, employees, or agents, concerning the matter have arisen within the geographical environs of the Northern District of Indiana.

9.  Belinda is bringing these proceedings within the time limits as identified in the Equal Employment Opportunity Commission Form 161-B, issued under mailing date of July 12, 2012. A photocopy of the aforesaid Equal Employment Opportunity Commission Form 161-B is attached hereto, and made a part hereof and identified as "Plaintiff's Exhibit A." Rathert received the Form 161-B on or about July 12, 2012. Therefore, Rathert timely filed this action within ninety (90) days of her receipt of EEOC Form 161.

10. Prior thereto Belinda timely initiated her Equal Employment Opportunity Commission proceedings by filing of a certain "Charge of Discrimination", as signed and filed by Belinda on June 21, 2011. That same "Charge of Discrimination" was also filed with the Indianapolis, Indiana Offices of the Equal Employment Opportunity Commission on the date of June 21, 2011. A photocopy of Rathert's "Charge of Discrimination" is attached hereto and made a part hereof and identified as "Plaintiff's Exhibit B".

## IV. FACTUAL STATEMENT OF THE CLAIM:

11. Belinda was employed by Goodwill from approximately July 23, 2008, through April 13, 2011, the effective date of her termination.

12. When Belinda was hired by Goodwill she informed Goodwill's management that she suffered from multiple sclerosis, and from time to time would have medical needs arise due to her illness.

13. Therefore, Goodwill was fully informed that Belinda was, and is an individual with a qualified disability.

14. In approximately July of 2010, Belinda began suffering from health issues related to her multiple sclerosis, which required her to take Family Medical Leave Act time off of work. Belinda's treating physician suggested to her that she request that Goodwill provide her with several accommodations, which would alleviate some of the symptoms of her multiple sclerosis. Therefore, during approximately late November or early December of 2010, Belinda requested a document magnifier, and a larger computer monitor as accommodations to assist with her failing eye sight.

15. The request for a document magnifier, and a larger computer monitor was made to the management of Goodwill and was, at a minimum, received by several of Goodwill's management including, but not limited to, Melissa Stolfo (Director Workforce Development, Impact Goodwill Industries of Michiana, Inc.), Verna Kubisiak (Director of Support Services, Goodwill Industries of Michiana, Inc.), Debie Coble (Vice President of Workforce Development Services, Goodwill Industries of Michiana, Inc.), Daniel Scarsella (Vice President of Human Resources, Goodwill Industries of Michiana, Inc.) and Nancy Ellen Allbaugh (Goodwill Vocational Rehab Coordinator, Goodwill Industries of Michiana, Inc.).

16. On December 2, 2010, Melissa Stolfo sent an e-mail to the Goodwill help desk requesting a keyboard with big numbers, and also a document magnifier, but failed to request the

larger computer monitor, as was specifically requested by Belinda. Thereafter, on December 6, 2010, Melissa Stolfo informed Belinda that she would be receiving her keyboard with enlarged characters shortly, but also sent an e-mail to Verna Kubisiak stating that the IT Department was not taking care of obtaining a document magnifier for Belinda. At no time did anyone from the management of Goodwill ask Belinda what type of document magnifier she required, nor did they ask her whether she actually needed an enlarged character keyboard. Furthermore, no request had yet been made for an enlarged computer screen, which was the main concern of Belinda.

17. On December 7, 2010, Debie Coble finally asked Belinda what type of document magnifier she would most benefit from. However, no orders had been placed for a document magnifier, or an enlarged computer monitor.

18. On approximately December 10, 2010, Belinda received her keyboard with enlarged characters. Although she thanked the Goodwill management for providing her with the keyboard, the keyboard proved to be difficult to use as it required Belinda to reach an extended distance to type on the keyboard, which caused pain in her wrists.

19. On January 13, 2011, Melissa Stolfo sent an e-mail to Mary Ellen Albaugh inquiring as to whether Ms. Albaugh could assist Ms. Stolfo in obtaining a large computer monitor, or a screen magnifier due to Belinda's disability. The e-mail confirms that Belinda had obtained, and given Goodwill a doctor's note, which indicated her need for the magnification equipment as a reasonable accommodation pursuant to the Americans with Disabilities Act. **Therefore, only after approximately two months had passed was Ms. Stolfo attempting to obtain the necessary equipment to reasonably accommodate Belinda.**

20. Thereafter, on January 17, 2011, Ms. Stolfo sent an e-mail to Belinda Rathert informing her that she could not obtain magnification equipment without the State of Indiana's Vocational Rehab Department being involved in the situation because the equipment Belinda

worked on was state owned and, for the first time, they informed Belinda that she must personally seek the accommodation from the state's vocational rehab.

21. Belinda immediately made a phone call to the state's Vocational Rehab Department to obtain the necessary magnification equipment.

22. After another month had passed, on February 25, 2011, Debie Coble e-mailed Belinda and informed her that the Goodwill management was potentially considering other options while they were waiting on the state's vocational rehab program to make a determination about the approval of the requested magnification equipment. **At this point more than three months had passed since Belinda' initial request had come in for assistive equipment, and yet nothing had been done.**

23. On Friday, March 18, 2011, almost four months from the time of the initial request for assistive equipment, Debie Coble sent an e-mail to Michelle Day stating the following:

> "I have a serious issue with an employee who is in need of accommodation. She is in the process of going through vocational rehab, but she is missing a lot of work due to problems the lack of accommodation is having. We can make an accommodation until vocational rehab comes through, but it would be providing a GW monitor on the state's system. G.W. is willing to pay for it without asking for reimbursement as we will get the monitor back once vocational rehab comes through. Is there any way I can do this in the interim? We really need to do something from an ADA standpoint. The problem is that she is out of FMLA time. To miss time is presenting us with another issue as our practice is to terminate individuals who cannot do the job after exhausting FMLA. **However, if we had control of the situation, we would have made the adjustments necessary to provide the accommodation to determine if she is stable to do the job.**"

24. It is clear that Goodwill was well aware of the need for Belinda's accommodation, was well aware of Belinda's disability, was well aware that the lack of accommodation was the direct cause of Belinda missing work, and was well aware that they had completely failed to take control of the situation which was causing them to run afoul of the requirements of the Americans with Disabilities Act.

25. On or about March 21, 2011, Goodwill attempted to make accommodations to assist Belinda with her visual impairment that she was suffering from due to her multiple sclerosis. They wrapped the overhead lights in Belinda's work space in blue cellophane, because they thought that providing blue light would lessen the strain on Belinda's eyes. Although it is true that blue light does lessen the strain on one's eyes, a proper accommodation would have been providing blue light bulbs, which have a special coating on them to cut out UVA light. Blue cellophane, commonly used when wrapping Easter gifts, does not provide the same UV protection.

26. Additionally, on or around March 21, 2011, a friend who was a case manager provided Belinda with sunglasses from the Dollar Store to use while at work. The sunglasses were also not a proper accommodation as they were not prescription sunglasses as recommended by her doctor, and furthermore, they were not the blue sunglasses which cut down on UV light, which were also required.

27. It is clear that Goodwill was attempting to protect themselves from allegations that they violated the Americans with Disabilities Act for failure to provide reasonable accommodation to an employee who had requested reasonable accommodation four months prior by providing equipment, and only provided accommodations which would do nothing to remedy the problems that were being experienced by their employee.

28. On March 24, 2011, Belinda informed Melissa Stolfo that she had to discontinue using the new keyboard with the enlarged characters because it was causing her left hand to become tingly and numb because "Reaching for the BIF keys on the keyboard was causing unnecessary strain." It should be noted that Belinda never requested, nor did her doctor prescribe, a keyboard with enlarged characters as a reasonable accommodation.

29. On March 24, 2011, Melissa Stolfo sent an e-mail to Debie Coble, and Daniel Scarsella, which was a draft to eventually be sent to Randy Fras, who was Belinda's VR counselor.

The relevant portions of the e-mail state as follows: "Belinda Rathert, a Goodwill staff worker working with the Impact Program whom you met with in February, is under my supervision.... Goodwill provided her with blue shields on overhead lights....and have provided her with sunglasses, which actually need to be blue, so they are really of no assistance to her.... Apparently her performance at work is endangering her continued employment. Goodwill is trying to work with her as much as we can, however, her attendance and error rate are such that her employment could be in jeopardy.... She is averaging four hours absence per week. Last week she was out for four days due to headaches caused by eye strain.... **We do not hold Belinda responsible for these issues because we fully understand the extent of her disabilities.** Belinda has been with us for over two years and has been a valuable employee. It was not until her last episode of MS that she has struggled. We do not want to lose Belinda as a employee, however, the current situation is causing much strain to the program, staff, and Belinda herself.... This situation is really very serious and we really want to seek out answers - but we need them quickly."

30. It is clear that the "current situation" that was discussed in the e-mail above, which allegedly was causing strain on the program, was the lack of accommodation provided to Belinda. It was only after four to four and a half months that Goodwill really began to get involved in Belinda's situation.

31. On March 25, 2011, Belinda was concerned for her continued employment so she e-mailed Daniel Scarsella regarding FMLA time and how it played into her current situation. Mr. Scarsella informed Belinda that on April 21, 2010 she would regain the use of her FMLA time.

32. **On April 1, 2011, Goodwill was informed by Michelle Day that they could in fact provide Belinda with the accommodation she had requested without waiting on the state, vocational rehab, or any other entity.** It is clear that Goodwill was dragging their feet and failing to provide a hard-working and dedicated employee with reasonable accommodation that

would come at a minimal cost, for no reason whatsoever.

33. It should be noted that by April 1, 2011, Belinda was out of the office and admitted to the hospital due to a flare up of her MS which was brought on by the failure of Goodwill to provide reasonable accommodations.

34. Additionally, on April 1, 2011, a debate was raging between Daniel Scarsella, Melissa Stolfo, and Debie Coble, about whose department would be required to pay for the fairly inexpensive (approximately $300.00) accommodations that Belinda was in dire need of. Belinda did receive a telephone call from Melissa Stolfo at the hospital informing Belinda that she would finally be receiving the accommodations that had been requested almost five months prior.

35. Thereafter, on April 12, 2011, Daniel Scarsella and Debie Coble came to Belinda's home, as she had just been released from the hospital. They informed her that they were going to terminate her because she had taken more time off than was allowed for by FMLA.

36. Mr. Scarsella, during their conversation with Belinda at her home, **rudely stated that it was his belief that Belinda had received a free stay at the hospital for one week that she did not deserve. He went on to state that he would retroactively terminate her if it was possible so that their insurance premium would drop because Belinda was such a strain on Goodwill's insurance as it was providing medical care for the treatment of her MS.** Mr. Scarsella's statements made it abundantly clear why Goodwill failed to provide any doctor-prescribed, reasonable accommodation to Belinda until after she had exhausted her FMLA time.

37. Goodwill and Mr. Scarsella wanted Belinda terminated because she, and her disability, was causing Goodwill's insurance premiums to rise. Mr. Scarsella and Goodwill clearly had a discriminatory purpose in their failure to provide reasonable accommodation with their treatment of Belinda.

38. As a result of all of the unlawful discriminatory acts on the part of Goodwill, Belinda

was terminated one week prior to the renewal of her FMLA time, and therefore has lost her income, and more importantly, her insurance. Belinda relied on her insurance from Goodwill to pay for the medical treatment, and the necessary drugs to treat her multiple sclerosis. Belinda's medication alone, without insurance, costs approximately $51,600.00 per year to obtain.

39. Belinda is currently financially unable to purchase any of the necessary medications that keeps her MS in remission and she is now experiencing severe difficulties stemming from major flare ups of her MS.

40. Thus, Belinda has not only lost income and insurance coverage, but has lost quality of life, and the ability to function in regular society.

41. As a result of the unlawful discriminatory acts on the part of Goodwill, by its administrators, officers, managers, supervisors, employees, or agents, including but not necessarily limited to the aforementioned Daniel Scarsella, Belinda is a victim of violations of the Americans with Disabilities Act as amended, as a result of the conduct of Goodwill.

42. Belinda is also a victim of unlawful discrimination and violation of the Rehabilitation Act of 1973, as a result of the conduct of Goodwill.

43. Belinda is entitled to relief from and against the defendant.

## V. DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff, Belinda Rathert, demands judgment against the defendants, including any and all relief as may be provided under the Americans with Disabilities Act, and The Rehabilitation Act of 1973, including but not necessarily limited to:

1. Both back pay and front pay, including compensation for medical treatment and drugs that would have been covered by insurance;

2. An award of pre-judgment interest;

3. An award of compensatory damages;

4.  An award of punitive damages;

   A. Totaling $750,000.00 exclusive of fees and costs; and

5.  An award of costs incurred by Plaintiff in her prosecution of this claim, including her reasonable attorney's fees, expert witness fees, as well as any court costs herein.


          /s/ Michael P. Misch  
Michael P. Misch  
Attorney No. 27970-71  
ANDERSON AGOSTINO & KELLER, P.C.  
131 South Taylor Street  
South Bend, IN 46601  
Telephone: (574) 288-1510  
Facsimile: (574) 288-1650  
Email: misch@aaklaw.com


## JURY DEMAND

Pursuant to Rule 38, F.R. Cv.P., Plaintiff hereby requests a trial by jury.

          /s/ Michael P. Misch  
Michael P. Misch  
Attorney No. 27970-71  
ANDERSON AGOSTINO & KELLER, P.C.  
131 South Taylor Street  
South Bend, IN 46601  
Telephone: (574) 288-1510  
Facsimile: (574) 288-1650  
Email: misch@aaklaw.com